UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CIVIL CASE NO. 21-52-DLB-CJS**

**UNITED STATES OF AMERICA**                                   **PLAINTIFF**

**v.**                   **MEMORANDUM OPINION AND ORDER**

**$31,889.00 IN UNITED STATES CURRENCY, ET AL.**       **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. # 64). Defendant having filed its Response (Doc. # 70), and Plaintiff having filed its Reply (Doc. # 71), this matter is now ripe for review. For the following reasons, Plaintiff's Motion for Summary Judgment is **granted.**

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from the seizure of $31,889.00 in United States currency (the "Currency") from Claimant Mahlet Belachew Kinde. On October 23, 2020, agents from the Drug Enforcement Agency ("DEA") received information from a confidential source that Terell Winn and Kinde were traveling from Cincinnati to Las Vegas with tickets purchased two days before travel to a known source city/state. (Doc. # 1-2 ¶ 4). DEA agents intercepted Winn and Kinde at the departure gate as they were boarding their flight. (*Id.* ¶ 5).

Winn and Kinde both consented to speaking to law enforcement. (*Id.*). Agents asked if Winn and Kinde were traveling with large sums of money or narcotics. (*Id.* ¶ 6).

1

Kinde, after looking at Winn, answered that she had about $30,000 in her bag. (*Id.*). Winn stated that he had neither. (*Id.*). Officers retrieved Kinde's checked bag and asked for consent to search it. (*Id.*). Again, Kinde looked at Winn before answering, to which Winn responded "Why are you looking at me? It is your bag." (*Id.* ¶ 7). Kinde eventually consented to the search. (*Id.*). Officers found large stacks of U.S. currency in $100.00 bills in her bag. (*Id.*). Winn also consented to a search of his carry-on, where officers found a large stack of currency in a hidden pocket. (*Id.* ¶ 8).

Officers asked Kinde why she was carrying so much cash. (*Id.* ¶ 7). Kinde "nervously" looked at Winn again, and stated it was for gambling and shopping. (*Id.*). An officer then asked if all the cash belonged to Kinde. (*Id.*). "[A]gain she looked to Winn as if she was waiting for help answering" before finally stating the money was all hers. (*Id.*). When asked about her sources of income, Kinde told officers she had made $50,000 last year through a trucking company she owns called Load Runner, LLC. (*Id.*). She also told officers she worked stocking shelves at Kohl's department store. (*Id.*). Kinde added that she was paying tuition for nursing school. (*Id.*). When officers advised Kinde that "the debt she has outweighs the ability to save this much cash," Kinde seemed visibly nervous and asked an officer to take her somewhere she could throw up. (*Id.*). An officer walked her to a trash can and observed her throw up. (*Id.*).

Officers interviewed Winn as well, asking about his employment and whether he had paid taxes over the last two years. (*Id.* ¶¶ 8-9). Winn stated he had not, and that his income comes from flipping cars. (*Id.* ¶ 9). Winn did not provide any proof of employment. (*Id.*). Officers also asked Winn if all the cash he and Kinde were carrying belonged to him. (*Id.* ¶ 10). Winn replied, "No." (*Id.*). Officers also asked Kinde if she had paid taxes

2

the previous year, to which she replied in the affirmative. (*Id*. ¶ 11). She then showed officers a screenshot of a banking account as proof of her trucking business. (*Id*.). The screenshot showed an available personal checking balance of $12,340.10 and a personal savings balance of $25,500.00. (Doc. # 64-1 at 22). The screenshot did not indicate the banking institution associated with the accounts. (*See id.*).

Winn made statements during questioning that officers "perceived as threatening." (Doc. # 64 at 3). Officers also "knew Winn to be involved with a drug-trafficking organization and to use people that do not have a criminal history to assist with his illegal activity". (Doc. # 64-1 ¶ 5). Officers seized three cell phones from Winn's bag in addition to the cash. (Doc. # 64 at 3). A total of $31,899.00 was seized from Kinde's bag and $9,500.00 from Winn's bag. (*Id*.). Each set of cash was placed in a separate evidence bag. (Doc. # 1-2 ¶ 12). When officers asked Kinde to sign the bag that held the $31,889.00, she asked Winn what she should do. (*Id*.). He replied, "It's your money. Sign the f*cking bag." (*Id*.).

The Currency was taken to the Airport Police Department, where a drug detecting canine indicated there was the presence of narcotic odor on the currency. (Doc. # 64-1 at 2). Officers obtained a state seizure warrant to search the phones seized from Winn. (*Id.*). On the phone officers found photos of a man matching Winn's appearance holding stacks of cash, photos of large stacks of cash, photos of marijuana and related products, and photos of a woman matching Kinde's appearance. (*Id.*).

The DEA initiated forfeiture proceedings against the currency seized from Winn and Kinde. Kinde filed a claim to the $31,899.00. (Doc. # 1-2 ¶ 15). The United States filed a Verified Complaint for Forfeiture *In Rem*, alleging that the Currency was furnished

3

in exchange for controlled substances, was proceeds traceable to such an exchange, or was intended to be used to facilitate the illegal sale of narcotics and is, therefore, subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).  (Doc. # 1 at 2).  Kinde timely filed a Verified Claim and Answer, stating that she earned the money from her employment.  (Docs. # 10, 11).

The United States sent Kinde requests for admission, interrogatories, and requests for production of documents.  Some of the information provided by Kinde was inconsistent or incomplete. For example, for the first time she claimed to have been traveling to Las Vegas for a wedding.  (Doc. # 64 at 5).  Kinde also failed to provide answers regarding her monthly expenses and sources of the Currency seized from her. (*Id.*).  In response to the requests for production, Kinde produced the following:

> paycheck stubs from Simiti Transportation LLC, including paycheck stubs for two additional weeks not previously provided (attached as Exhibit 3); an apparent e-mail invitation to an event in Las Vegas on Sunday, October 25 (attached as Exhibit 4); e-mail receipts from Delta Airlines for airline tickets purchased for Winn and Kinde on October 22, 2020, for a flight from Cincinnati to Las Vegas at 7:10 A.M. on October 23, 2020 (attached as Exhibit 5); DEA receipts from the seizure of the cash from Winn and Kinde (attached as Exhibit 6); and Kinde's tax returns for the years 2020, 2019, and 2018 (attached and filed under seal as Exhibit 7).

(Doc. # 64 at 5).

The United States virtually took Kinde's deposition on April 15, 2022.  In her deposition, Kinde said she was going to Las Vegas for a wedding.  (Doc. # 64-8 at 18). In response to a question asking why she had so much cash with her to go to a wedding, Kinde answered that she was planning to look for an apartment while in Las Vegas and did not want to leave the cash behind because she did not know when she would be back. (*Id.* at 19).  When asked the name of the person getting married in Las Vegas, Kinde

could not answer, stating that she was going to be a guest and "honestly [didn't] know their names," but that Winn was to be best man at the wedding. (*Id.* at 22).

During the deposition, the United States asked Kinde about her business and income. Kinde stated that her business had slowed down during the pandemic and her income was supplemented by unemployment compensation during that time. (*Id.* at 12). She stated that she "didn't make anything [in 2018]" because she had been taking time off for school and it had been a slow year. (*Id.* 8 at 21). When asked how much money she earned "on a yearly basis over the past few years" Kinde answered "[a]bout $30 thousand". (*Id.* at 46). The United States also asked Kinde which financial institution she used for her accounts. (*Id*. at 36). Kinde answered that her unemployment income and income from Load Runner, LLC were both deposited into a Wright-Patt Credit Union account. (*Id*. at 36-37). Kinde stated that this was also the financial institution associated with the account she showed officers at the airport. (*Id.* at 37) (referring to "[t]he account [she] had showed them at the time."). She said she was paid by Simiti Transportation by checks that she cashed (*Id.* at 38), and was paid by Kohl's by pay card for the month she was employed there. (*Id*. at 45).

Kinde provided the United States with tax returns for 2018, 2019, and 2020. In 2018 Kinde's gross income from her business was $43,702 and total expenses totaled $43,271, leaving Kinde with a net profit of $431. (Doc. # 66-1 at 47). In 2019 she had a total income of $36,178. (*Id.* at 61). In 2020, Kinde reported an income of $32,593, which included her business income and unemployment compensation. (*Id.* at 6).

Kinde also provided 2020 account statements for two Wright-Patt accounts. One account showed a balance of $2,198.75 from May 1, 2020 to October 31, 2020. (Doc. #

66-2 at 3-14). The second account showed a range of balances from the same time frame. (*Id.* at 17-53). The balance of the account fluctuated but stayed relatively low. (*Id.*). At some points the account balance was in the thousands, but never exceeded $6,503.27. (*Id.*).

On July 6, 2023, the United States filed the instant Motion for Summary Judgment (Doc. # 64). The United States argues Kinde has not presented evidence that would create a genuine issue of material fact as to the Currency's forfeitability or to establish that she is an innocent owner pursuant to 18 U.S.C. § 983(d). Kinde filed her Response (Doc. # 70), the United States filed its Reply (Doc. # 71), and the Motion is now ripe for review.

## II.   ANALYSIS

### A.   Standard of Review

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment "bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (citing *Plant v. Morton Int'l Inc.*, 212 F.3d 929, 934 (6th Cir. 2000)). To defeat a motion for summary judgment, the non-moving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). In deciding a motion for summary judgment, the Court must look at the

evidence "in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). Following the Court's review of the record, if a "rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

**B.  Discussion**

The United States argues that it has demonstrated by a preponderance of the evidence that this Currency is traceable to drug trafficking, and therefore subject to forfeiture. (Doc. # 64 at 9). Under 21 U.S.C. § 881(a)(6), property that is "furnished or intended to be furnished by any person in exchange for a controlled substance" or is "traceable to such an exchange" is subject to forfeiture to the United States. "[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). This burden can be met by a showing that a claimant did not have legitimate income sufficient to explain the amount of money seized. *United States v. $174,206.00 in U.S. Currency*, 320 F.3d 658, 662 (6th Cir. 2003). This showing is sufficient if "unrebutted by *any evidence* pointing to any other source of legitimate income." *United States v. Real Prop. 10338 Marcy Rd. Nw., Canal Winchester, Ohio*, 659 F. App'x 212, 218 (6th Cir. 2016) (citing *id.*).

Direct evidence is not required to show the property's traceability to drug offenses. *United States v. Veggacado,* 37 F. App'x 189, 190 (6th Cir. 2002). Instead, the Court may draw "reasonable inferences . . . from the evidence presented to establish a nexus between the property and drug activity." *Id.* The Court will consider all the facts presented by the United States. *See United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280,

7

284 (6th Cir. 1992) ("The aggregation of facts, each one insufficient standing alone, may suffice to meet the government's burden."). The United States argues that it has met its burden based on the totality of the following circumstances:

> Kinde and Winn's suspicious travel itinerary; Winn's known involvement with drug-trafficking and use of persons without criminal histories in his illegal activity; the large amounts of cash that Kinde and Winn were carrying; the manner in which the cash was hidden in their bags; Kinde's behavior during the encounter with law enforcement, including appearing nervous, vomiting, and repeatedly looking to Winn for the answers to questions; the lack of sufficient explanation for the source of the Currency and evidence of legitimate income that is insufficient to explain the large amount of cash seized; Kinde's inconsistent statements regarding why she was traveling with such a large amount of cash; and the drug-detecting canine's alert to the Currency.

(Doc. # 64 at 9-10).

Kinde argues that "[t]he Government's Motion rests largely on the fact that Ms. Kinde and her companion were traveling on one-way tickets to a known source city/state" and that "[t]here is nothing illegal about purchasing a one-way ticket." (Doc. # 70 at 5). Kinde further argues that it is improper for the United States to look to her nervous behavior at the airport and Winn's aggression towards law enforcement officers as evidence that the property was derived from drug activity. (*Id.* at 6). The Court disagrees with Kinde's characterization of the United States' evidence. The United States' Motion rests on a plethora of evidence—including the "insufficiency of [Kinde's] legitimate income . . . to explain [her] possession of the currency," which Kinde has not rebutted. *See United States v. Cunningham*, 520 F. App'x 413, 415 (6th Cir. 2013). Taking together all the evidence put forth by the United States in support of its motion—the images of drugs and money taken from Winn's cell phone, Winn's known involvement in drug trafficking, Kinde's nervous behavior and inconsistent explanations for their travel plans, the fact that

8

they were traveling to a known source city/state, and Kinde's tax returns and bank statements—this Court concludes the United States has met its burden by a preponderance of the evidence and shown it is more likely than not that the Currency is traceable to drug trafficking.

Even if the Court completely disregarded the evidence of the one-way ticket, Kinde's nervous behavior, and Winn's behavior towards law enforcement, as Kinde urges in her response, the Court would still conclude that the United States met its burden because Kinde has not presented sufficient evidence showing that the Currency was legitimately derived. *See $174,206.00 in U.S. Currency*, 320 F.3d at 662. Kinde argues that the $31,889 seized by the United States was generated legitimately from Load Runner, LLC, her unemployment compensation, and her income from her employment with Kohl's department store. (Doc. # 70 at 3). However, the numbers just do not add up. Moreover, Kinde has not provided documents that rebut the United States' assertions.

Kinde never had close to $30,000 in any of her accounts. And she was unable to produce documents showing the legitimacy of the screenshot she showed officers at the airport of the $25,500 savings account balance. The tax returns she produced also do not support a conclusion that the Currency was derived from her business and income. Just because she showed incomes of just over $30,000 for 2019 and 2020 does not mean she would have that much left as disposable cash, as shown by the balances in her bank statements. Her Wright-Patt account also did not show any large withdrawals around the time of the seizure and Kinde has not provided documents showing she had any other bank accounts. The only additional evidence Kinde submits to this Court is an affidavit in

9

support of her position, but "an unsupported affidavit that is contradicted by other evidence does not create a genuine dispute of material fact sufficient to survive a summary judgment motion." *Smit v. Meyer*, 461 F. App'x 503, 505 (6th Cir. 2012)

Kinde has also not established that she was an innocent owner of the Currency. *See* § 983(d). To assert this defense, Kinde must show by a preponderance of the evidence that she either did not know of the conduct giving rise to forfeiture or, upon learning of the conduct, "did all that reasonably could be expected under the circumstances to terminate such use of the property." § 983(d). Kinde has not produced evidence that establishes either. Nor has she affirmatively argued this defense in her response.

The Court concludes that Kinde has not produced evidence to support her case. Therefore, the United States has met its burden to show the Currency is subject to forfeiture. *See $174,206.00 in U.S. Currency*, 320 F.3d at 662.

### III. CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1) Plaintiff's Motion for Summary Judgment (Doc. # 64) is **GRANTED**.

(2) This matter is **DISMISSED AND STRICKEN** from the Court's active docket; and

(3) **JUDGMENT** in favor of Plaintiff shall be filed contemporaneously herewith.

This 2nd day of November, 2023.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\ORDERS\Cov2021\21-52 Forfeiture MOO.docx